428496

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN SEYBERT | : |
| Plaintiff | : |
| v. | : CIVIL ACTION NO. 07-3333 |
| THE INTERNATIONAL GROUP, INC. | : Jury Trial Demanded |
| Defendant | : |

## O R D E R

AND NOW, this _____ day of _____, 2009, upon consideration of

Plaintiff's Motion *in Limine* to Preclude Evidence and Arguments Related to the

*Faragher/Ellerth* Affirmative Defense, and Defendant's Response thereto, it is

hereby ORDERED that Plaintiff's Motion is DENIED.

BY THE COURT:

_____
Gene E.K. Pratter, J.

428496

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN SEYBERT | : |
| | : |
| Plaintiff | : |
| v. | : CIVIL ACTION NO.  07-3333 |
| | : |
| THE INTERNATIONAL GROUP, INC. | : Jury Trial Demanded |
| | : |
| Defendant | : |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND ARGUMENT RELATED TO THE *FARAGHER/ELLERTH* AFFIRMATIVE DEFENSE

Defendant, the International Group, Inc., (IGI) by its counsel makes this its

reply opposing Plaintiff Susan J. Seybert's Motion in Limine to Preclude Evidence

and Argument Related to the *Faragher/Ellerth* Affirmative Defense, and in

support thereof states the following:

1.    Admitted.

2.    Admitted.  By way of further elaboration, the failure of the

plaintiff to prove a causal nexus between the alleged harassment and the

performance evaluation would leave the defense viable.

3.    Denied as a conclusion of law.

WHEREFORE, for the reasons set forth more fully in Defendant's

Memorandum in Opposition to Plaintiff's Motion in Limine to Preclude Evidence

and Argument Related to the *Faragher/Ellerth* Affirmative Defense, Defendant

respectfully requests that this Honorable Court deny Plaintiff's Motion in Limine to

Preclude Evidence and Argument Related to the *Faragher/Ellerth* Affirmative

Defense.

Respectfully submitted,

MacELREE HARVEY, LTD.


By:   /S/ William T. Wilson
      William T. Wilson, Esq. (ID#: 41793)
      Juan P. Sanchez, Esq. (ID#: 206839)
      MacELREE HARVEY, LTD.
      Attorneys for Defendant
      17 West Miner St, P.O. Box 660
      West Chester, PA  19381-0660
      (610) 436-0100

430080

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN SEYBERT | : | NO:  07-3333 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE INTERNATIONAL GROUP, INC. | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE EVIDENCE AND ARGUMENT RELATED TO THE *FARRAGHER/ELLERTH* AFFIRMATIVE DEFENSE

### Introduction

Susan Seybert (Seybert) asserts that she was subjected to a hostile work environment created by Brett Marchand (Marchand) during a period when he was her supervisor, and that she was unlawfully terminated in retaliation for complaining about that environment at the end of a later period when David Faoro (Faoro) was her supervisor.  As she acknowledges, The International Group, Inc. (IGI) has raised the affirmative defense established by Faragher v City of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries, Inc. v Ellerth, 524 U.S. 742 (1998).  Seybert's motion maintains that, because Marchand, the alleged harasser, gave her a performance evaluation that resulted in a reduced monetary bonus, the affirmative defense does not apply.  She contends that the affirmative defense is not available when there has been a tangible employment action.  It is correct that a tangible employment action resulting from unlawfully

1

discriminatory harassment in the workplace will normally foreclose the asserted defense, but Seybert's motion nevertheless lacks merit in this case.

Seybert fails to recognize that a causal connection between the harassment and the adverse action must be established rather than assumed. Moreover, even if the affirmative defense were foreclosed, Seybert seeks to exclude evidence related to the fundamental elements of her claim and to issues regarding damages that are independent of the affirmative defense.

**Facts**

This Honorable Court has already addressed the adequacy of Seybert's proof for the purposes of summary judgment so, although the issue remains in dispute and without prejudice to its right to challenge the proof under Fed. R. Civ. 50 at the appropriate time, IGI assumes that there is a genuine issue as to whether Marchand created a hostile environment.

IGI will prove that, according to Seybert's own testimony, the occasions on which Marchand demonstrated overt hostility toward her carried with them no implication of sexual bias and were more coincident in time with provocations she created. After Seybert called Heather Meikle, the Director of Human Resources, to complain that Marchand had discussions with her subordinates that might injure morale (Ex. A, Deposition of Susan Seybert, p. 65-66), he called within five minutes, screaming at her for having done so. (Ex. A, p. 68). He yelled at her again (Ex. A, p. 110-111) after she told him she did not have the same respect for him that she did for Ken Reucassel, the company president (Ex. A, p. 101),

2

and that respect had to be earned (Ex. A., p. 100).  He screamed at her yet again (Ex. A., p. 55-56) after she wrote a memorandum advocating the continued employment of another employee (Ex. A., p. 56) on September 26, 2003 (Ex. A., p. 58).

In contrast, on the only three occasions when Seybert alleges any overt suggestion of gender bias in any of Marchand's behavior, there were no displays of anger or hostility on his part.  On an occasion when she noted him to be staring at her breasts, she asked him if her shirt were unbuttoned (Ex. A., p. 50), and he responded only by saying he did not know what she was talking about (Ex. A., p. 51).  On a subsequent occasion when he was similarly staring (Ex. A., p. 52), she said nothing about it and left after the conversation ended (Ex. A., p. 53).  These were the only two occasions of this nature (Ex. A., p. 54).  The third incident involved a sexual remark (Ex. A., p. 115) at a recognition dinner for personnel who had worked on the "BP transition." which took place a few days after the third incident on which Marchand had screamed at Seybert (Ex. A., p. 114-115).

The performance evaluation that supported the reduced bonus contains nothing that suggests that sexual harassment, or any complaint of sexual harassment emanating from Seybert, was the basis therefore. (Ex. B., Performance Evaluation of  December 2003).

 Seybert seeks compensation for emotional distress, humiliation, depression, loss of self-esteem, loss of life's pleasures (Complaint, para. 51) and punitive damages (Complaint, Prayer for Relief, para. D), among other remedies.

3

Her motion does not suggest that she is limiting her claim for injury in regard to a hostile environment to the bonus.

IGI had a policy prohibiting sexual harassment in the workplace (Exhibit C, Human Resources Guidelines). Seybert claims that she complained to Ken Reucassel about working for Marchand, including his staring at her breasts shortly after the second such incident (Ex. A., p. 69. 80). Her assertion that she included reference to Marchand staring at her breasts in this complaint is denied by Ken Reucassel, who recalls the complaint as being related to business-related frustration over working for Marchand (Ex. D., Deposition of Ken Reucassel, p. 21, 24). They are in agreement that a complaint was made after the BP recognition dinner and the sexually oriented remark made there, although Seybert claims it was made to Ross Reucassel, Ken's father (Ex. A., p. 128-129), and Ken recalls speaking to Seybert directly (Ex. D., p. 31-33). He has testified that she told him she did not want to make a formal complaint (Ex. D., p. 36), but that he nonetheless admonished Marchand about inappropriate conversation during the dinner (Ex. D., p. 41). After that, he contacted Seybert and asked her if she considered the matter closed, or whether she wanted to take it further (Ex. D., p. 42-43). She said she did not want to take the matter further. (Ex. D, p. 43).

## Argument

### A. The Affirmative Defense is Viable Against Seybert

Although she couches her motion as one in limine, Seybert actually seeks the summary foreclosure of a substantive defense and must, accordingly,

4

demonstrate the absence of a genuine dispute of material fact regarding that
defense in order to prevail.  The affirmative defense created by Faragher v City
of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries, Inc. v Ellerth, 524
U.S. 742 (1998) requires the employer to prove that it exercised reasonable care
to prevent and promptly correct any sexually harassing behavior and that the
employee failed to take advantage of any preventive or corrective opportunities
provided by the employer to avoid harm. Faragher, 524 U.S. at 808.

Seybert claims that the affirmative defense, which is unnecessary to the
employer if an unlawful hostile environment is not first proved, is inapplicable
when there is a tangible personnel action shown.  She overlooks, however, that
she has not yet proved that the tangible action which forms the basis of her
argument was causally related to the allegedly discriminatory environment.
Seybert's own provocations of Marchand provide ample evidence from which a
reasonable jury could conclude, even if she were in a hostile environment, that
the Performance Evaluation was the result of entirely non-discriminatory factors.

In discussing the parameters of the affirmative defense, the Supreme
Court has clearly indicated that a tangible employment action resulting from
unlawful harassment will foreclose the defense.  To render the defense
unavailable to an employer that takes adverse action as to the complaining
employee for reasons that have no connection to the hostile environment or
unlawful discrimination would, however, insulate that employee from
accountability for performance or immunize him or her from the normal vagaries
of corporate restructuring for economic reasons.  The Supreme Court implicitly

5

recognized that, before the defense becomes inapplicable, it must first be proven

that the adverse action was causally related to the hostile environment.  Ellerth

says, "[n]o affirmative defense is available, however, when the supervisor's

harassment culminates in a tangible employment action, such as discharge,

demotion, or undesirable reassignment." 524 U.S. at 765.  Courts have

recognized, from this and other language in the Supreme Court's decisions, that

"[e]ven if a tangible employment action occurred, an employer may still assert the

affirmative defense if the tangible employment action 'was unrelated to any

harassment or complaint thereof'".  Elvig v Calvin Presbyterian Church, 375 F. 3d

951, 959 (9th Cir. 2004) quoting, Nichols v Azteca Rest. Enters., 256 F. 3d 864,

877 (9th Cir. 2001).  Accordingly, the Seventh Circuit recently said that even if a

tangible employment action were established, it "does not bar [the employer]

from asserting the Ellerth/Faragher defense" where there was a dispute of fact as

to the causal connection. Hardage v CBS Broadcasting, Inc., 427 F. 3d 1177,

1185 (7th Cir. 2005).[1]

The one case cited by Seybert in regard to this issue, Puglisi

v.Centerpoint Properties, 2008 U.S. Dist. LEXIS 10465 (N.D. Ill. Feb. 13, 2008),

is not at odds with IGI's position.  There, the employer argued that it was entitled

to assert the defense, despite the existence of a tangible employment action, but

not based on a dispute of fact as to causal connection.  Rather, it suggested that

the tangible personnel action did not impact on the affirmative defense because

---

[1] If Seybert sought compensation only for the economic loss due to the 2003 Performance
Evaluation under her hostile environment theories, her motion might make sense, since the
causal connection would be indispensable to the entirety of her claim.  She has not limited her
claim in that fashion.

6

the plaintiff's claim was for retaliation, rather than just sexual harassment. 2008
U.S. Dist. LEXIS *6.  Although Seybert also raises both theories, IGI does not
make the same argument.  Instead, IGI relies on a well supported principle that
was either inapplicable to the facts, or simply waived, in Puglisi.

Ken Reucassel received a complaint from Seybert indicating serious
problems in her relationship with her manager, but with barely a suggestion that
those problems were related to her gender.  He responded by counseling the
manager, and heard no further complaints or allegations of either gender
discrimination or retaliation.  Seybert even admits that, after her complaint, she
experienced no further events that had sexual overtones.  This is exactly what
will establish the defense.  See, Weston v Commonwealth of Pennsylvania,
Department of Corrections, 251 F. 3d 420, 427 (3rd Cir. 2000).  That issue is for
the jury, even when there are tangible employment actions, if those tangible
actions may not have been caused by an unlawful action. Id., 251 F. 3d at 430.


**B. The Challenged Evidence is Relevant to other Issues in the Case**

Seybert is more ambitious with her motion than merely to foreclose a
defense.  She also seeks to exclude "from proof any fact or matter relating to
such affirmative defense," implying that evidence that would be relevant to the
defense might be the subject of presumptive exclusion from the trial.  All of the
evidence relevant to the affirmative defense, however, is also relevant to other
issues that will remain for resolution by the jury.

7

Fed. R. Evid. 401 defines relevant evidence as that which has any tendency to make a fact that is of consequence more probable than not.  Fed. R. Evid. 402 makes clear that there is a presumption in favor of the admission of relevant evidence.  The elements of Seybert's claim and her damage are indisputably of consequence for the jury.

The elements of a sexually hostile environment claim are(1) that the employee suffered intentional discrimination because of sex, (2) which was severe or pervasive, (3) detrimentally affected the plaintiff, (4) would detrimentally affect a reasonable person of the same sex in a similar position, and (5) respondeat superior liability. Weston v Pennsylvania, 251 F. 3d 420, 426 (3rd Cir. 2003).  The Faragher/Ellerth defense relates to the fifth element, but the third and fourth remain to be independently proved.

The existence of efforts by IGI to prevent and correct sexual harassment and the extent to which Seybert availed herself of those mechanisms, are relevant to the issue of whether any harassment had a detrimental affect on her, both objectively and subjectively.   See, Boumehdi v Plastag Holdings, LLC, 489 F. 3d 781, 788 (7th Cir. 2007)(the employee's numerous complaints were relevant to show that she was detrimentally affected).  They are logically related, for almost precisely the same reasons to a claim for compensation for emotional distress, humiliation, loss of life's pleasures, loss of self-esteem and depression.  They are relevant to Seybert's claim for punitive damages, which depends on a showing of reckless disregard for the plaintiff's legal rights. Kolstad v American Dental Ass'n, 527 U.S. 526 (1999).

8

430080

## Conclusion

Seybert's motion should be denied in its entirety.

Respectfully submitted,

By:  _____

WILLIAM T. WILSON (ID#: 41793)
MacELREE HARVEY, LTD.
17 West Miner Street, P.O. Box 660
West Chester, PA  19381-0660
Attorney for Defendant

9

## CERTIFICATE OF SERVICE

The foregoing original document has been filed using the ECF Filing System, and therefore shall be automatically sent to all parties entitled to service under the Federal Rules of Civil Procedure.

    /s/ William T. Wilson
William T. Wilson
MacELREE HARVEY, LTD.
Attorney ID#:  41793
Attorney for Defendant
17 West Miner Street
P.O. Box 660
West Chester, PA  19381-0660

Date:   May 5, 2009