IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN J. SEYBERT, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE INTERNATIONAL GROUP, INC., | : | |
| Defendant | : | NO. 07-3333 |

MEMORANDUM

GENE E.K. PRATTER, J.                                                                                    OCTOBER 13, 2009

I.      INTRODUCTION

Susan Seybert has sued her employer, The International Group, Inc. ("IGI"), claiming sexual harassment based on an arguably hostile work environment, retaliatory harassment, and retaliatory discharge, under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. After the close of discovery, IGI filed a motion for summary judgment, which was denied by the Court on March 17, 2009. In anticipation of the upcoming trial, Mrs. Seybert has filed a motion in limine seeking to exclude certain of her email exchanges that IGI seeks to use at trial. Mrs. Seybert argues that the emails are irrelevant to the claims and defenses in the case and, even if relevant, are not sufficiently probative, especially given the nature and content of the emails.

Some of the emails at issue have obviously sexual content, and arguably fall under the purview of Federal Rule of Evidence 412, which calls for an in camera hearing to evaluate admissibility. Other emails are not sexual in nature, and do not implicate Rule 412. In the interest of judicial economy, the Court held an in camera hearing on October 8, 2009, to evaluate *all* of the contested emails, whether or not they are, or may be, covered by Rule 412.

For the reasons that follow, the Court denies Mrs. Seybert's motion in part, and grants the motion in part. The Court denies the motion with respect to all of the challenged exhibits except for one exhibit, Exhibit 62, which is an email exchange containing banter about health topics and Mrs. Seybert's use of antidepressant medications. With respect to Exhibit 62, the Court grants the motion.

To the extent the motion is denied, the denial is without prejudice to Mrs. Seybert to object on any appropriate basis at trial, if and when IGI actually proffers some or all of the exhibits in question. The Court will evaluate the propriety of the offering of the exhibit(s) and the objections at trial, once the Court has the precise context and contours of the case as presented.

II.     STATEMENT OF PERTINENT FACTS

The parties' respective assertions of fact are recounted in the Court's March 17, 2009, Memorandum. For present purposes, it is sufficient to state that Mrs. Seybert claims that her IGI supervisor, Brett Marchand, subjected her to harassment because of her gender and in retaliation for her complaints to management about his sexually harassing conduct. Mrs. Seybert also claims that she was discharged by IGI in retaliation for her complaints regarding Mr. Marchand's behavior.

With respect to overtly sexual behavior, Mrs. Seybert alleges that Mr. Marchand stared at her breasts on two separate occasions. She also alleges that he made the following comment to her, at a work-sponsored Recognition Dinner, regarding a particularly indulgent dessert: "I heard it's really good if you go down deep, into the chocolate, with your berry." This comment was allegedly made in front of Mrs. Seybert's work colleagues, including

supervisors.

With respect to offensive actions that were not overtly sexual, Mrs. Seybert alleges that Mr. Marchand berated and yelled at her on a number of occasions, ignored her in a manner that made it difficult for her to do her job correctly, and gave her a bad performance review that deprived her of a raise or bonus and ultimately contributed to her termination by IGI.[1]

Twelve exhibits are covered by Mrs. Seybert's motion in limine, specifically Exhibit 40, Exhibit 41, Exhibit 44, Exhibit 44A, Exhibit 51, Exhibit 55,[2] Exhibit 56, Exhibit 57, Exhibit 59, Exhibit 61, Exhibit 62, Exhibit 63, and Exhibit 79. Seven of these exhibits arguably have some sexual content, while Exhibits 41, 44, 44A, 51, 62, and 63 do not.

The exhibits *with* sexual content include emails that were exchanged between Mrs. Seybert and other individuals, most of whom were IGI personnel. These emails were exchanged using IGI hardware and software, during Mrs. Seybert's regular hours of employment with IGI, and at IGI office locations. It appears that all of the emails were dated during the last five months of Mrs. Seybert's employment at IGI. They consist of various stories, jokes, photographs, cartoons and the like, along with occasional commentary from Mrs. Seybert or others along the specific email chain. They use sexual words, metaphors, puns, double entendres and other innuendo, in a possible attempt to amuse, entertain and

---

[1] Record citations and further discussion of these factual assertions can be found in the Court's March 17, 2009, Memorandum denying IGI's motion for summary judgment.

[2] Mrs. Seybert's motion in limine also covered Exhibit 58, but IGI has since acknowledged that Exhibit 58 is a duplicate of Exhibit 55, and has withdrawn Exhibit 58.

convey various messages in a supposedly humorous fashion.

The exhibits *without* sexual content also include emails that were exchanged between or among Mrs. Seybert and other individuals, most of whom also were IGI employees. Again, these emails were exchanged using IGI hardware and software, during Mrs. Seybert's regular hours of employment with IGI, and at IGI office locations.  With the exception of Exhibit 62, the emails use anecdotes, jokes, and cartoons to convey messages about corporate supervisors, mangement and culture, and the apparent perils and banality of corporate life. Generally, these emails are not flattering to corporate managers as a class, group or category.

III.     DISCUSSION

    A.     Applicability of Rule 412 to the Exhibits Involving Sexual Content

Mrs. Seybert asserts, and IGI disputes, that Rule 412 of the Federal Rules of Evidence applies to the Seybert email exchanges that have sexual content.  Rule 412, which is titled "Sex Offense Cases; Relevance of Victim's Past Sexual Behavior or Alleged Sexual Predisposition," states:

> (a) Evidence generally inadmissible.
>   The following evidence is not admissible to any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):
>   (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.
>   (2) Evidence offered to prove any alleged victim's sexual predisposition.
> (b) Exceptions.
>   (1) In a criminal case….[section omitted]
>   (2) In a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party.  Evidence of an alleged victim's

    reputation is admissible only if it has been placed in controversy
    by the alleged victim.
  (c) Procedure to determine admissibility.
    (1) A party intending to offer evidence under subdivision (b) must - -
      (A) file a written motion at least 14 days before trial
      specifically describing the evidence and stating the purpose for
      which it is offered unless the court, for good cause requires a
      different time for filing or permits filing during trial; and
      (B) serve the motion on all parties and notify the alleged victim
      or, when appropriate, the alleged victim's guardian or
      representative.
    (2) Before admitting evidence under this rule the court must conduct a
    hearing in camera and afford the victim and parties a right to attend
    and be heard.  The motion, related papers, and the record of the
    hearing must be sealed and remain under seal unless the court
    orders otherwise.

  In its revised form, Rule 412 aims to "safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." Fed. R. Evid. 412 (Advisory Committee Notes on 1994 Amendments). See also Wilson v. City of Des Moines, 442 F.3d 637, 643-644 (8th Cir. 2006).

  It is by no means clear that Rule 412 must apply to any of the emails at issue. Although some of the emails include sexual content, none of them expressly involve the sexual "behavior" or "predisposition" of Mrs. Seybert or anyone else involved in this case. Likewise, none of the emails bear on Mrs. Seybert's personal sexual "reputation" per se, in that none of them involve her actual or alleged personal sexual activity. Rather, the emails contain sexual stories, jokes, images and metaphors of a more general nature, exchanged in an apparent attempt at humor, however ill-advised or lame. All things considered, it could be said that these emails do not touch upon *any* of the relevant privacy or other interests

contemplated by Rule 412, or that the protections of Rule 412 are not necessary in this case or even helpful to any party here.

Nonetheless, other courts in this district have used Rule 412 to analyze evidence involving attempted sexual humor and innuendo. See, e.g. Flick v. Aurora Equipment Co., Inc., No. 03-2508, 2004 U.S. Dist. LEXIS 4304, **6-7 (E.D. Pa. Jan. 15, 2004) (using Rule 412 to analyze evidence regarding plaintiff's sexual jokes and banter at work, including evidence that plaintiff placed a foam carving of male genitalia in the women's restroom at work, where such evidence was relevant to plaintiff's hostile work environment claim based in part on sexual innuendo); Cacciavillano. v. Ruscello, Inc., No. 95-5754, 1996 U.S. Dist. LEXIS 16528, **1-5 (E.D. Pa. Oct. 31, 1996) (using Rule 412 to analyze evidence regarding plaintiff's sexual jokes and banter at work).  Accordingly, to err on the side of caution, and assuming, without deciding, that Rule 412 applies to the Seybert emails containing sexual content, following notice the Court held an in camera hearing on October 8, 2009, in which the parties set forth their positions on the relevance and admissibility of each separate contested exhibit.

     B.     Admissibility of Exhibits Containing Sexual Content

To bring a successful sexual harassment claim for hostile work environment, a plaintiff must prove, inter alia, that she, personally, was detrimentally affected by the harassment; that is, she must prove that she was *subjectively* offended.  A plaintiff must also prove the alleged harassing conduct would have detrimentally affected a reasonable person in like circumstances; that is, she also must prove that she was *objectively* offended. Jensen v. Potter, 435 F.3d 444, 449, 451-52 (3d Cir. 2006).

Mrs. Seybert argues that her emails in question containing sexual content are completely irrelevant to her claims in this case and should be excluded. In the alternative, she argues that the emails are not sufficiently probative to be admissible under Rule 412. Meanwhile, IGI argues that the emails are relevant to Mrs. Seybert's sexual harassment claim because they tend to undermine Mrs. Seybert's claim that she was subjectively offended by Mr. Marchand's overtly sexual conduct, and tend to show that she often welcomed sexual humor that was similar to the humor of Mr. Marchand's joke at the Recognition Dinner. IGI also argues that the emails are relevant and admissible to show that Mrs. Seybert was not objectively offended by Mr. Marchand's conduct, are relevant and admissible as to Mrs. Seybert's emotional distress claim, and are relevant and admissible on Mrs. Seybert's claim for punitive damages.

          1.      Whether Mrs. Seybert Was "Subjectively Offended"

"[A] plaintiff's sexual conduct at work is relevant to the issue of whether she was offended when others engaged in similar conduct at work." Equal Employment Opportunity Commission v. Smokin' Joe's Tobacco Shop Inc., No. 06-01758, 2007 U.S. Dist. LEXIS 62047, *4 (E.D. Pa. Aug. 23, 2007). Relevant sexual conduct may include sexually provocative statements, dress, humor, and innuendo. See Fedio v. Circuit City Stores, Inc., No. 97-5851, 1998 U.S. Dist. LEXIS 21144, **17-18 (E.D. Pa. Nov. 4, 1998) (holding that plaintiff's sexually provocative statements at work were "highly probative of how little Plaintiff would be offended by ... [the alleged harasser's] alleged sexual innuendos when she in fact felt comfortable publicizing information regarding her sex life."); Sublette v. The Glidden Co., No. 97-5047, 1998 U.S. Dist. LEXIS 15692, **6-9 (E.D. Pa. Oct. 1, 1998)

(holding that plaintiff's sexual speech and dress at work were relevant to her hostile work environment sexual harassment claim).  See also Meritor Sav. Bank v. Vinson, 477 U.S. 57, 69 (1986) ("While 'voluntariness' in the sense of consent is not a defense to [a sexual harassment] claim, it does not follow that a complainant's sexually provocative speech or dress is irrelevant as a matter of law in determining whether he or she found particular sexual advances unwelcome.  To the contrary, such evidence is obviously relevant.").  This remains true whether or not the alleged harasser actually observed or had knowledge of the plaintiff's conduct.  See Smokin' Joe's Tobacco Shop Inc., 2007 U.S. Dist. LEXIS 62047, at *4; Flick, 2004 U.S. Dist. LEXIS 4304, at *6.

Even if the evidence is relevant, Rule 412 authorizes its admission only if it "substantially outweighs" the prejudice to the plaintiff.  Courts are most likely to admit evidence when it is directly related to questions placed at issue by the plaintiff's theory, and when it reflects conduct by the plaintiff that is similar to the conduct of the alleged harasser.  See Flick, 2004 U.S. Dist. LEXIS 4304 at *6 (described supra); Cacciavillano, 1996 U.S. Dist. LEXIS 16528, at *5, n.3 (excluding evidence of plaintiff's sexual banter and jokes in a case involving alleged sexual touching and advances, but noting that the same evidence would probably have been admitted if plaintiff's claims had been based on a hostile work environment "caused solely by sexual banter and antics (without touching)."); Sublette, 1998 U.S. Dist. LEXIS 15692 at *11 (noting that the admissibility of evidence may be evaluated differently in harassment cases based on sexual advances, as compared with harassment cases based on hostile work environment caused by sexual banter and antics).  See also Saffa v. Oklahoma Oncology, 405 F. Supp. 2d 1280, 1291 (N.D. Ok. 2005).

Here, the emails with sexual content involve the same general type of humor as Mr. Marchand's comment at the Recognition Dinner - a humor rooted in sexual innuendo and supposed euphemisms. For instance, Mr. Marchand's alleged comment about going "down deep into the chocolate [dessert] with your berry" presumably could be likened to Exhibit No. 61, which contains a photograph of an elderly man wearing only a Santa hat and boots, resting on his stomach, with the caption, "Just Roll Me Over Darlin . . . 'cause I'm Layin On Yer Present." In both cases, creative imagery and base sexual wordplay are being used to construct metaphors in an apparent attempt to titillate, amuse, entertain, instruct, or simply "gross out" (in the phrase of some generations) others.

The remaining emails containing sexual content all make similar attempts at humor. By exchanging these emails with others during her IGI work hours, and using IGI computers, Mrs. Seybert may have been sanctioning the humor that the emails contained - a humor that may be found to be similar to the supposed humor underlying Mr. Marchand's comment at the Recognition Dinner. Accordingly, IGI is entitled to pursue the argument that the emails are relevant to Mrs. Seybert's possible appreciation of this type of humor, and specifically, whether she was subjectively offended by Mr. Marchand's comment.[3] The risk of prejudice here is low, given that the emails mostly contain jokes and stories about generic topics, made-

---

[3] Mrs. Seybert notes that IGI's Human Resources Director, Heather Meikle, testified during a discovery deposition that Ms. Meikle thought the emails containing sexual content were relevant to this litigation because they "showed a tolerance level for [Mrs. Seybert] in terms of language and jokes with sexual overtones." See Exhibit C to Mot. in Lim. Of course, Ms. Meikle's assessment of the emails' relevance is not germane at all to the question of whether the emails are in fact relevant to the case.
Similarly, it is not dispositive whether IGI's counsel believed that the emails Mrs. Seybert exchanged with individuals not affiliated with IGI "likely did not relate to much of anything." See Mot. In Lim. at 5 and Ex.D to Mot. in Lim., Deposition of Susan Seybert, at 155-156.

up characters or representative figures (e.g. Santa Claus). They do not bear on Mrs. Seybert's own sexual history or personal sexual conduct, but only on the issue of whether she appreciates or is offended by possibly crass sexual humor in the workplace. Therefore, the Court cannot conclude that the emails are inadmissible at this time, at least with respect to the issues presented at this juncture.[4] The Court may reconsider the admissibility of these emails at trial, once the parties have presented a clearer picture of the ultimate claims and defenses during the trial of this case.

          a.     Whether the Emails Were "At Work" or "In the Workplace"

With respect to the foregoing analysis, the parties have debated whether the transmission of the challenged emails should be considered conduct that took place "at work" or "in the workplace," on the theory that the emails are more likely to be admissible if they directly relate to the work environment. As the Advisory Notes to Rule 412 state, evidence of the "alleged [sexual harassment] victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, [but] non-work place conduct will usually be irrelevant." Fed. R. Evid. 412 Advisory Note (internal citation omitted). See Flick, 2004 U.S. Dist. LEXIS 4304, at *6 ("Our courts have concluded that when a Title VII plaintiff engages in sexual conduct *at work*, that conduct is relevant on the issue of whether the plaintiff was offended when others engaged in similar conduct *at work.*") (emphasis added).

Reported opinions have not provided a clear definition of "in the workplace" or "at work," insofar as the concept applies to this current age of communication and "the

---

[4] This Memorandum is addressing only the issues raised in the motion in limine and the response. Recognizing that there may be other challenges to the offering of any given exhibit during trial, the Court is not making definitive "all purpose" rulings on the exhibits in question.

workplace." For good or ill, employees' work and home lives are increasingly entwined, so much so that employees may use "company time" and employer-owned equipment to transmit messages that have little or nothing to do with the reasons for, and purpose of, their employment. Although not à propos of Mrs. Seybert, one can easily see how the distinctions quickly fade with "telecommuting," for instance.

Here, it is at least undisputed that the at-issue emails were exchanged using IGI hardware and software, during Mrs. Seybert's regular hours of employment, and at IGI office locations. The majority of the subject emails, though not all, were exchanged between Mrs. Seybert and other IGI personnel. In some sense, therefore, the emails at issue constitute "at work" conduct. However, Mrs. Seybert clearly was not conducting work activities by her receipt and transmittal of these emails, insofar as the content of the emails certainly cannot be said to advance or relate in any way to the work that IGI employed her to do.

After reviewing the caselaw concerning Rule 412, it appears that the more connected a piece of evidence is to a plaintiff's workplace, the more probative it is as to claims such as the ones in this case. Accordingly, the sexual emails that Mrs. Seybert exchanged with individuals who are not associated with IGI, its customers, or suppliers likely have (all other things being equal) somewhat less probative value than the emails exchanged with IGI personnel.

Nevertheless, *all* of the sexual emails include humor that is arguably sufficiently similar to Mr. Marchand's comment at the Recognition Dinner, that they are inexorably probative of the issue of whether Mrs. Seybert was subjectively offended by his comment. Even under the strict test of Rule 412, the Court cannot conclude that the emails are

inadmissible, at least as far as the issues addressed herein. See Fedio, 1998 U.S. Dist. LEXIS 21144, at *18 n.7 (holding that even if plaintiff's sexual conduct occurred *outside* the workplace, evidence of that conduct was still admissible because it was relevant to her hostile work environment sexual harassment claim).[5]

### 2. Emotional Distress Claim

Just as the email exchanges are relevant to show whether Mrs. Seybert was subjectively offended by Mr. Marchand's "berry" comment, they are also relevant to the issue of whether Mrs. Seybert experienced emotional distress as a result of the comment. This is because, at the most basic level, the email exchanges show the *effect* of the "berry" comment on Mrs. Seybert's mental state - that is, whether the comment made her distressed, offended, or something else. See Saffa, 405 F. Supp. 2d at 1291 (N.D. Ok. 2005) (admitting evidence of plaintiff's sexual comments and behavior at office Christmas party and in the workplace because such comments and behavior were relevant to whether plaintiff was subjectively offended by the sexual conduct of others, and were also relevant to plaintiff's emotional distress claim).

### 3. Whether Mrs. Seybert was "Objectively Offended"

IGI also argues that the emails containing sexual content are relevant to show whether Mrs. Seybert was *objectively* offended by Mr. Marchand's comment. IGI states: "[w]here a

---

[5] This is not to imply that all of the emails containing sexual content have the *same amount* of sexual content. To be sure, some of the emails at issue have much less sexual content than others, and, accordingly, less probative value in this case. Those same emails, however, also tend to have less risk of prejudice. In any event, the balancing test of Rule 412 favors admitting *all* of the emails containing sexual content, at least unless and until the Court can evaluate whether any given exhibit is inappropriately cumulative, for example, or is deficient in some other respect.

type of humor is commonplace in a work environment, it is less likely that it could be considered objectively offensive to the employees who work there.  As with all of the other issues in the case, [Mrs. Seybert] is free to argue that workers at [IGI] would find Marchand's comment, as well as the jokes [Mrs. Seybert] sent around or otherwise participated in herself, offensive." Def.'s Resp. to Mot. in Lim. at 9-10; see Def's Suppl. Br. at 6.  This argument, for which IGI provides no supporting legal authority, makes little sense because it depends on what *other IGI employees* might have thought of Mr. Marchand's conduct, rather than what a *reasonable person in the plaintiff's position* would have thought of Mr. Marchand's conduct. See Third Circuit Model Civ. Jury Instruction 5.1.4.  Accordingly, the email exchanges between Mrs. Seybert and other IGI employees are not, for the reason(s) currently advanced by IGI, relevant to whether Mrs. Seybert was objectively offended by Mr. Marchand's conduct.

      4.      Punitive Damages Claim

"Punitive damages are awarded to punish the defendant for outrageous conduct and deter it and others like it from similar conduct in the future." Guess v. Pfizer, Inc., 971 F. Supp. 164, 176 (E.D. Pa. 1996) (citing Smith v. Wade, 461 U.S. 30, 54 (1983)).  A Title VII plaintiff is entitled to seek punitive damages based on actions undertaken "with malice or with reckless indifference to [her] federally protected rights." Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999).  Here, IGI asserts that Mrs. Seybert's sexual emails are relevant and admissible with respect to her punitive damages claim.  IGI states:

> [Mrs. Seybert's] own conduct in the workplace would be relevant to decision makers taking corrective action in their assessment of whether the action was adequate to the

> circumstances, and sufficient to prevent the problem from recurring. It is those persons' state of mind which is at issue if the question of punitive damages is submitted to the jury.

See id. at 535. The Court evaluates this argument as weak because it appears at this juncture that the IGI decision-makers did not *know* about the email exchanges until *after* Mrs. Seybert was terminated. See Ex. C to Mot. in Lim. at 197-98; Def. Supplemental Br. in Opp. to Mot. in Lim. at 3-4. Therefore, it is unclear how Mrs. Seybert's exchange of emails could or would have affected the IGI decision-makers' state of mind with respect to the adequacy of a particular "corrective action." Indeed, with punitive damages, after all, the focus is on IGI's conduct, not on Mrs. Seybert's conduct. Under the balancing test of Rule 412, the emails containing sexual content are not relevant, and hence, not admissible with respect to Mrs. Seybert's punitive damages claim.

    C.    Evidence Not Containing Sexual Content

Federal Rule of Evidence 403 applies to the email exchanges not containing sexual content. Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

    1.    Exhibit 62

Exhibit 62 is different in kind from all of the other emails that do not contain sexual content. Exhibit 62 is a series of e-mails exchanged between Mrs. Seybert and a friend who is not an IGI employee, containing banter about a variety of topics, including their health.

Specifically, the exhibit mentions Mrs. Seybert's use of anti-depressant medication. There is no sexual content.

Mrs. Seybert points out that, to date, the only offer of proof that IGI has provided with respect to Exhibit 62 is that the exhibit relates to Mrs. Seybert's admission of taking anti-depressant medication. She states that the Exhibit is unnecessary because she has agreed to include information related to her use antidepressant medication prior to her employment termination in the parties' Stipulation of Uncontested Facts. The Court agrees, and also notes the potential for prejudice created by Mrs. Seybert's banter about anti-depressant medication, as well as the potential that the exhibit will cause confusion, waste time, and contribute to the "needless presentation of cumulative evidence." Fed. R. Evid. 403. Accordingly, Exhibit 62 shall be excluded at trial.

  2.  Remaining Emails Not Containing Sexual Content

With respect to the remaining email exchanges without sexual content, IGI asserts that the email exchanges reflect Mrs. Seybert's overall negative attitude toward work, and are relevant to her retaliatory discharge claim because they tend to show a lack of connection between Mrs. Seybert's allegedly protected conduct (i.e. her complaints about Mr. Marchand's behavior) and her job elimination. These emails also show that Mrs. Seybert chose to share sarcastic, disrespectful or derisive humor about workplace superiors with her IGI peers and subordinates. This, in turn, informs the circumstances of Mrs. Seybert's termination and any actual or perceived loss of her credibility amont her peers, superiors or subordinates.

IGI arguably overstates the relevance of these emails, most of which contain generic cartoons regarding the undesirability of working in a corporate environment and working under unreasonable supervisors. That said, the emails may have some probative value for the reasons that IGI suggests, again, depending upon the way the trial develops and the claims take shape. They also may tend to show that Mrs. Seybert's emotional distress, if any, resulted from generic issues related to IGI's corporate culture and not from unlawful harassment or retaliation. The probative value of these emails may be low, but the potential for prejudice here is also low, especially given how common this type of humor is in today's society. Under the balancing test of Rule 403, IGI is entitled to endeavor to make out its defensive arguments, and the Court determines that the emails are not inadmissible at this time. As with the emails containing sexual content, the Court may reconsider the admissibility of these emails at trial, once it is presented with a clearer picture of the claims and defenses in this case.

IV.   CONCLUSION

For the reasons and to the extent discussed above, the Court denies the motion in limine with respect to all of the challenged exhibits except for Exhibit 62, and grants the motion with respect to Exhibit 62. An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE